Regis Kelly, Appellant, v. Howard M. Fox, Individual Trading as Riverview Roller Skating Rink and Riverview Park Company, Appellees.

Gen. No. 41,913.

Opinion filed April 20, 1943. Rehearing denied May 4, 1943.

CECIL L. CASS, of Chicago, for appellant.

LORD, BISSELL & KADYK, of Chicago, for appellees; EDWARD S. CROWELL and GUY C. BALTZ, both of Chicago, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an action for damages for personal injuries alleged to have been sustained by plaintiff, Regis Kelly, as the result of the negligence of the defendants, Howard M. Fox, doing business as Riverview Roller Skating Rink and the Riverview Park Company, a corporation. On defendants' motion at the close of plaintiff's evidence the trial court directed the jury to find defendants not guilty. The jury returned a verdict of not guilty and judgment was entered thereon. Plaintiff appeals.

The complaint alleged in substance that plaintiff went to defendants' rink for the purpose of roller skating; that after paying his admission fee he was furnished with a pair of roller skates; that defendants through their agent carelessly and negligently adjusted said roller skates on plaintiff's shoes; that defendants' negligence in fastening and adjusting the skates was the proximate cause of plaintiff's injuries; and that he was at all times in the exercise of ordinary care for his own safety.

Defendants' answer denied the material allegations of plaintiff's complaint.

Plaintiff testified that on November 22, 1939 he and his wife and several other couples went roller skating at the Riverview Roller Skating Rink; that he purchased his admission ticket, entered and, after checking his things, was given a pair of roller skates by an attendant after the latter had asked him the size of his shoes; that he took the skates and went over to a bench where another attendant placed the roller skates on his shoes, fastening and adjusting said skates. with a key or crank carried by him (the attendant) for that purpose; that "the skates seemed to feel all right . . . the skates appeared all right . . .. so I skated over to a runway, which went around the main rink . . . and then I came back to a small rink . . . a practice or beginner's rink . . . I thought I had better go in there and see how I could get along on skates . . . it was a rather small place . . . I had gone down to one end and came part of the way back when I felt my foot jar to the floor . . . I was going very slowly . . . my foot suddenly hit the floor, and although I knew my foot was under me . . . still I was falling to the floor"; that at the time his foot "hit the floor or just prior thereto" he "had not noticed anything particularly about the skate"; that "immediately after I felt my foot hit the floor, I ended up on the floor, and my leg was in a position right here in front of me, with the skate hanging from the strap, which was around the ankle, and the clamps were off the shoe . . . I moved the leg up this way, preparing to get up, when I noticed it pained me severely"; that he "did not try to get up"; that he called one of his friends who was near by and told him that he thought "there was something wrong with the leg . . . it might be broken"; and that "my feet did not go out from under me; not that I know of. But this foot hit

the floor, and I had a sensation of standing on the leg. In other words, I could tell from the position that my leg was in that I was standing on it and still I was falling; it was confusing.'' Plaintiff further testified that the roller skates ''fastened'' with ''a clamp on the front and strap on the back that goes around the ankle.''

He testified on cross-examination that he ''had the skates on probably two minutes'' and that he had skated slowly about ''fifty or sixty feet'' before he fell; that after the skates had been put on his shoes he ''stood up as a person will almost naturally do, and stood on them with a little force, first on one, and then on the other, to see if they were all right . . . I thought that they were on all right''; and that ''I had watched the man put them on'' and he appeared ''to be putting them on all right.''

The shoes which plaintiff wore the night of the occurrence in question were offered and received in evidence. To properly fasten the skates they are adjusted so that the horizontal portion of the clamps fits over the sole of the shoe on both sides near the toe. There are five slight but well defined vertical indentations or marks on the left or inner side of the sole of plaintiff's right shoe. These extend from the bottom of the sole approximately two thirds of the way up the side of the sole of the shoe. The skates are not in evidence and neither is there any evidence as to the character of the surface of the inner end of the horizontal portion of the clamp in question or of the inner surface of the vertical portion of said clamp. Plaintiff himself was the only witness to the occurrence but five members of his party testified that they reached him immediately after he fell and that they saw the roller skate hanging by the strap from his right ankle. As a result of the accident plaintiff suffered a spiral fracture of the tibia in his right leg.

Plaintiff's theory is that "the evidence presented questions of fact to be determined by the jury; that it was contrary to law for the Court to direct a verdict on the evidence and that the Court should have allowed the jury to pass upon the evidence."

Defendants rely upon the following propositions to sustain the judgment: "1. The trial court properly directed a verdict for the defendants because there is no evidence of negligence in the record or evidence from which a jury could reasonably infer negligence on the part of the defendants. (a) The existence of a certain fact cannot reasonably be inferred from the evidence when the existence of another fact, inconsistent with the first, can be inferred from the same evidence. (b) The presumption is in favor of the action of the trial court in directing a verdict for the defendants, and the plaintiff has failed to point out any evidence which overcomes that presumption."

We are mindful of the rule that on a motion for a directed verdict for a defendant the trial court must consider the evidence in its aspect most favorable to the plaintiff and that all reasonable inferences arising from the evidence must also be taken most strongly in favor of plaintiff and of the further rule that negligence and contributory negligence are usually questions of fact to be determined by the jury, but after a careful examination and analysis of plaintiff's evidence we are impelled to the conclusion that it does not show or tend to show that defendants were guilty of any negligence which proximately caused or contributed to plaintiff's injuries.

In the first place it is impossible from plaintiff's evidence to rationalize the manner in which he fell or just what caused him to fall. He said that the manner of his falling was "confusing." When he was asked, "But at no time did your feet go out from under you?" He answered, "Not that I know of, no sir." There is no evidence in the record that the clamps on

the skate attached to plaintiff's right shoe became unfastened before he fell. He stated in this connection that he "had not noticed anything particularly about the skate" before he fell. The first time he noticed "the skate hanging from the strap" was when he was on the floor. He watched the attendant put the skates on his shoes. They appeared to him to be all right and they felt all right. He stood up and tested each skate with his weight on same and they still felt all right. He skated slowly for about 50 or 60 feet before he fell and there was no indication that the skates had been improperly fastened and adjusted.

The evidence thus far discussed not only does not establish or tend to establish negligence on the part of defendants or their agents but affirmatively shows that defendants' attendants or agents exercised due care in attaching the skates to plaintiff's shoes.

The sole remaining evidence to be considered is that concerning the indentations or marks on the inner side of the sole of plaintiff's right shoe. In plaintiff's brief it is stated that "the clamp marks on the right shoe show conclusively that the skate was not put on properly." Because of these clamp marks plaintiff also concludes that the flange or horizontal portion of the clamp was not fastened over the sole on the inner side of his right shoe.

While there is no evidence in the record that the marks heretofore referred to were made by the clamp, defendants concede that it is a reasonable inference that they were so made. However, the fact that there are vertical marks on the inner side of the sole of plaintiff's right shoe extending two thirds of the way up, is equally consistent with the conclusion that the skate was attached properly and that the top portion or flange of the clamp was fastened over the sole of the shoe. Since there are no horizontal marks or marks parallel with the sole in or on the left side of the sole of that shoe, and it is reasonable to infer that

there would have been a horizontal mark or marks if the inside end of the top of the clamp had been pressed in and fastened to the side of the sole, the horizontal portion or flange of the clamp must have been over or above the sole of the shoe. It may also be just as reasonably inferred that the skate was put on properly but that the violence of plaintiff's fall forcibly detached the clamp from the shoe and caused the marks on the left side of the sole thereof.

In *Coffin v. Chicago City Ry. Co.*, 251 Ill. App. 169, in holding that a peremptory instruction was proper under somewhat similar circumstances the court said at pp. 174, 175:

"Whatever may be the law elsewhere, it is the rule in this state, established by a large number of decisions, that the existence of a certain fact cannot be reasonably inferred from the evidence when the existence of another fact, inconsistent with the first, can be inferred from the same evidence with equal certainty; a fact cannot be established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only conclusion that can be drawn therefrom."

(To the same effect are *Chicago Union Traction Co. v. Hampe*, 228 Ill. 346, and *Peterson & Co. v. Industrial Board*, 281 Ill. 326.)

In the instant case if any reasonable inference at all can be drawn from the marks on the side of the sole of the shoe that the skate was improperly attached, it can with equal certainty be inferred from the same marks that the skate was properly attached. This evidence concerning the marks or indentations on the inner side of the sole of plaintiff's right shoe, being the only evidence offered by plaintiff from which his charge of negligence could be deemed to have been established, the trial court properly directed a verdict for defendants.

The action of the trial court was presumptively correct, even though it directed a verdict in favor of defendants, and the burden is on plaintiff to overcome that presumption. In *Brandt v. Brandt,* 286 Ill. App. 151, the plaintiff appealed from a judgment entered on a verdict directed against her at the close of her case. In affirming the action of the trial court this court said at p. 154:

"The rule of law to be applied upon the submission of a motion of this character is well settled. The ultimate question to be decided upon such motion is whether there is any evidence in the record from which a jury could, acting reasonably in the eye of the law, return a verdict for plaintiff. If there is such evidence, the motion should be denied; if not, then the motion should be granted. *Libby, McNeill & Libby v. Cook,* 222 Ill. 206; *Allen v. United States Fidelity & Guaranty Co.,* 269 Ill. 234; *Devine v. Delano,* 272 Ill. 166; *Ginsberg v. Ginsberg,* 361 Ill. 499.

"As the presumption is in favor of the action of the trial court, it is for plaintiff to point out evidence from which the jury could reasonably find in her favor under one of the counts of her declaration, and the ultimate question for our determination here is whether plaintiff has produced such *quantum* of evidence."

Negligence is always a question of fact that must be alleged and proved as averred. It cannot be supported by mere conjecture or surmise, but must be made referable to some specific cause or defect. (*Dobbins v. Brown,* 119 N. Y. 188.)

Upon the record before us we are unable to discover any evidence of actionable negligence upon the part of defendants. Therefore the trial court properly directed the verdict for defendants and entered judgment thereon.

*Judgment affirmed.*

FRIEND and SCANLAN, JJ., concur.