Roy Elmer Pomrenke, Plaintiff-Appellee, v. Herman Betzelberger, Defendant-Appellant.

Gen. No. 10,447.

Third District.

May 20, 1963.

Louis F. Gillespie, of Springfield (George B. Gillespie, Stuart Dobbs, Gillespie, Burke & Gillespie, of counsel), for appellant.

Heyl, Royster, Voelker & Allen, of Peoria (William J. Voelker, Jr., and Roland N. Litterst, of counsel), for appellee.

CARROLL, J.

This is an action to recover damages for injuries sustained in a collision between plaintiff's automobile and a truck driven by the defendant. Trial before a jury resulted in a verdict in favor of the plaintiff in the sum of $15,000. Judgment was entered on the verdict, and defendant's post-trial motion was denied.

The collision occurred on February 9, 1960, at about 10:00 a. m. The plaintiff, accompanied by a passenger, was driving his automobile in a westerly direction along U.S. Route 136 in Logan County, Illinois. U.S. Route 136 is a paved, preferential highway approximately 20 feet in width. The defendant was driving

his Ford Pick Up truck in a Northerly direction on Emden Road, a secondary highway controlled by a stop sign at its intersection with U.S. Route 136. The road surface was wet. There was some rain mixed with snow falling at the time, but not to such an extent as to interfere with visibility. There were no obstructions to visibility to automobiles approaching either on Route 136 or Emden Road. Visibility on Emden Road to the east was approximately one-half mile. Plaintiff approached the intersection at about 55 miles per hour, and maintained that speed as he entered the intersection. He first observed defendant's truck when he was about 300 feet from Emden Road and defendant's vehicle was about 100 feet South of the intersection and traveling about 20 miles per hour. It appeared to plaintiff at that time that the defendant's truck was in the process of stopping at the intersection. When plaintiff reached the center of the intersection, his automobile was struck on the left front side by the front end of defendant's truck. Following the collision, plaintiff's car continued more than 80 feet to the Northwest, where it turned over and came to rest in a ditch. The defendant's truck came to rest approximately 25 feet Northwest of the point of impact. The point of impact was marked by debris, and was determined to be on the North half of Route 136, opposite the center of Emden Road.

The defendant, testifying in his own behalf, stated that he stopped his truck at the stop sign, shifted to low gear, entered the intersection, and struck the automobile of the plaintiff. The defendant admittedly never saw plaintiff's automobile until after the collision. Defendant pleaded guilty to failure to yield right of way to plaintiff.

As a result of the collision, plaintiff's passenger was killed. The plaintiff sustained multiple injuries and was removed from the scene to a hospital where he was attended by Doctors Rossi and Perino. He was

found to have suffered severe and painful face lacerations. A laceration on the cheek required sixty to seventy stitches on both the outside and inside. The front of plaintiff's mouth was lacerated, as well as the bridge of his nose and his neck. Plaintiff was also treated by a Dr. Slaw, who cared for plaintiff during his stay in the hospital and subsequent thereto. Plaintiff also suffered a bump on the right knee and a brain concussion. The cheek wound healed, but left a jagged unsightly scar. Plaintiff's cheek sagged, and for several months following the accident, he suffered loss of sensation in the cheek and lip, and had difficulty in eating and controlling the flow of saliva. The severance and damage to nerves in the cheek apparently resulted in a twitching of the cheek, or, a tic. He also complained of some pain and discomfort in his back, which did not exist prior to the accident. Plaintiff's medical expenses were $706.05, property damage was $1,237.

At the time of the occurrence, plaintiff was 53 years of age and had performed heavy labor for most of his life. His general health was good, and he had never experienced any disabling pain or discomfort. He was discharged as able to return to work about two months following the occurrence. He had been engaged as a construction worker, earning approximately $3 an hour. At the time of the occurrence he was not employed, owing to periodic work interruption in the trade because of inclement weather. Plaintiff returned to work April 6, 1960, and testified to subsequent pain, discomfort, fatigue and stiffness in his back.

 The defendant assigns as error the trial court's failure to grant defendant's motion for directed verdict, and its overruling the post-trial motion. He contends that the plaintiff failed to prove due care and was, as a matter of law, contributorily negligent in failing to look for the approaching car of

defendant at the intersection. We have carefully examined the authorities cited by defendant in support of his position. While we agree with the abstract propositions of law relied upon, we find them inapplicable to the instant case. In our view, the evidence was ample to require submitting the question of due care to the jury. The plaintiff was traveling on a preferential highway at a reasonable rate of speed, and testified that he did in fact observe the vehicle of defendant approaching at a slow rate of speed, apparently preparing to stop in obedience to a stop sign. While one traveling on a preferential highway cannot claim an absolute right of way, it is nevertheless the law that plaintiff had a right to expect that the defendant would obey the stop sign and yield the right of way, as required by law. Thomas v. Buchanan, 357 Ill 270, 192 NE 215; Thomas v. Smith, 11 Ill App2d 310, 137 NE2d 117. Just as negligence may be proven by inference or evidence largely circumstantial, so also, due care may be thus proven. It is conceded here that the defendant failed to yield the right of way to plaintiff. As above pointed out, the plaintiff had a right to rely on defendant's yielding the right of way. Under the facts and circumstances and the inferences to be reasonably drawn therefrom, the jury could have concluded that the plaintiff did exercise that degree of care for his own safety which the circumstances required. We hold therefore, that plaintiff's due care presented a question of fact for the jury and not one of law.

■■ Complaint is made that a new trial ought to have been granted because the verdict is against the manifest weight of the evidence. It is well settled that a verdict will not be disturbed unless palpably erroneous, where a jury has passed upon disputed questions of fact. We have carefully examined the evidence and cannot say that the jury's verdict is

manifestly and palpably against the weight of the evidence.

■■■ Defendant contends the verdict is excessive because of the absence of proof of permanent disability and lost wages. The question raised by such contention is whether the amount of the verdict is so grossly excessive that justice demands a different result. Plaintiff's injuries can hardly be characterized as trivial. The facial lacerations were serious, and left the plaintiff with permanent scars. The temporary eating difficulty, uncontrolled saliva flow, and cheek droop, would alone justify a substantial award. It appears that the plaintiff is affected with a tic and experiences some pain and discomfort in his back. In our opinion, permanent disability need not necessarily be shown to support a verdict in the amount returned by the jury in this case. Even though this court might have arrived at a different figure, it does not follow that the amount of award made indicates passion or prejudice. We believe the verdict is adequately supported by the evidence and we will not disturb it as excessive.

■■ The defendant argues that plaintiff's failure to have his medical witnesses examine him at or immediately prior to the trial raised an adverse presumption on the question of disability and permanency. We believe the point to be a proper matter for argument to the jury. The presumption urged by the defendant is one of fact and not one of law, and apparently was not persuasive with the jury. Since there was ample direct testimony from the plaintiff and the attending physician as to the nature and extent of the injuries, the jury were free to determine the fact issue presented from the evidence.

■■ ■■ Defendant also complains of the admission of a portion of the testimony of Dr. Slaw, plaintiff's attending physician. It appears that the Doctor

was permitted to relate his opinion concerning the prognosis in the case of severed or damaged nerves. Since the doctor had already established that such severance and damage was suffered by the plaintiff, such an opinion as attending physician was clearly competent. The defendant also points out that the doctor's opinion with respect to plaintiff's condition at the time of the trial was based in part upon information obtained by the doctor from a casual (but nevertheless direct) inquiry and observation when he happened to meet the plaintiff outside of his office, and therefore incompetent. Apparently the doctor observed the tic and asked the plaintiff how he was getting along. He based his opinion in part on his observation and the plaintiff's response to his questioning on the occasion of their chance meeting. The defendant contends that the doctor should not have been permitted to relate his opinion except as was founded upon professional consultation at his office. We find no merit in defendant's contention. Dr. Slaw was plaintiff's attending physician, and the information upon which his opinion was founded was gained directly from the plaintiff and can in no sense be regarded as incompetent. It seems of little moment that the doctor's observation and inquiry was made on the street rather than in his office since he was testifying to his own opinion based on his own training, experience, observation and treatment. We feel the verdict is supported by sufficient evidence, a portion of which was the doctor's testimony, and that such testimony was founded upon facts and not upon mere conjecture or speculation, as suggested by defendant.

During the course of his argument, plaintiff's counsel complained that local juries were too conservative, and that they did not place a figure on an injury commensurate with its true value. He then remarked that, "When you go out here to buy an

314

appliance, you pay as much for that appliance as they pay in Springfield." Objection was promptly made on the ground that there was no evidence as to what local juries were doing with respect to evaluation in injury claims, and that argument was presumptuous and prejudicial. The objection was sustained. While we agree that the argument may have been improper, on the ground that it served no real purpose in helping the jury resolve the issue in the case, we do not find the argument so harmful or prejudicial as to require a reversal. The remark can hardly be said to have created a misleading standard or set of values by which the jury was likely to arrive at an unrealistic result. We believe that the error, if any, was cured by the court in sustaining the objection. Following the objection, plaintiff's counsel re-stated his position as to evaluation, which in our view removed any serious objection to his prior argument on the point.

During the course of defendant's closing argument, defendant's counsel made the following statement, "While I do not charge him (the plaintiff) with any deliberate misrepresentation with respect to anything he said, I charge him with a keen desire to get as much money out of Mr. Betzelberger as he can, notwithstanding the injuries suffered." Plaintiff's counsel objected in the following language, "We object on the grounds there is no evidence in this record that any money is going to come from Mr. Betzelberger out of this case." Plaintiff's objection was sustained, and no objection or motion to strike was directed to plaintiff's objection by defendant. The defendant now urges that the remarks of plaintiff's counsel implied the existence of insurance, and that the remark was highly improper and prejudicial, and that the court below ought to have granted defendant a new trial. No objection having been made to the language in which plaintiff's objection was

couched, nor motion for a mistrial made, the question was not preserved for review. It should be pointed out, however, that in our view defendant's point is not well grounded. It would appear that the remark by plaintiff's counsel was induced by questionable argument on the part of defendant's attorney. This was a very brief exchange, insurance was not specifically mentioned, the objection was promptly sustained, and defendant continued with his argument. Defendant argues that plaintiff's objection amounted to an invitation to the jury to render an excessive verdict, because they were led to believe that Mr. Betzelberger would not personally have to respond to any damages awarded. We cannot agree. In the first place, the existence of insurance is not fairly presumable from the language employed. Secondly, defendant's own argument induced the language objected to. Thirdly, we do not believe that our juries should be regarded as a class of persons easily deceived or misled. To say that the jury disregarded all the evidence and the instructions of the court, and were instead motivated by the single innocuous remark complained of, would seem to impeach the intelligence of the jury. On the contrary, we find ample evidence to support the verdict of the jury, and we find no error harmful to the extent that it might have affected the result. For the reasons stated the judgment is affirmed.

Affirmed.

REYNOLDS, PJ and ROETH, J, concur.